**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**<u>MCALLEN</u> DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 18-70408 |
| MED CARE EMERGENCY | § | |
| MEDICAL SERVICES, INC. | § | |
| Debtor | § | CHAPTER 11 |

---

**DEBTOR MED CARE EMERGENCY MEDICAL SERVICES, INC. COMBINED**
**CHAPTER 11 DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**

---

Med Care Emergency Medical Services, Inc. (the "Debtor") files this Plan of Reorganization (the "Plan") and Chapter 11 Disclosure Statement (the "Disclosure Statement"). The Debtor is seeking to repay its debts over time pursuant to the terms of its Plan. As required by the Bankruptcy Code (the "Code"), the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan contains the terms for how each class of claims will be treated under the Plan.

The Court has not yet confirmed the Plan. In other words, the terms of the Plan are not yet binding on anyone. If the Court later confirms the Plan, then the Plan will be binding on the Debtor and all creditors and interest holders in this case.

The Debtor represents that everything in this document is true to the best of its knowledge. However, the information contained herein has not been independently audited.

**<u>READ THIS DOCUMENT CAREFULLY FOR INFORMATION ABOUT THE</u>**
**<u>FOLLOWING:</u>**

• The Debtor and significant events during the bankruptcy case.

• How the Plan proposes to treat claims or equity interests of the type you hold (e.g., what you will receive on your claim or equity interest if the Plan is confirmed).

• Who can vote or object to the Plan.

• What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan.

•    Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation.

•    The effect of confirmation of the Plan.

## I. Disclaimer

**THE DEBTOR URGES ALL HOLDERS OF CLAIMS AND INTERESTS IN IMPAIRED CLASSES RECEIVING BALLOTS TO ACCEPT ITS DISCLOSURE STATEMENT.**

**THE DISCLOSURE STATEMENT IS DESIGNED TO PROVIDE ADEQUATE INFORMATION TO ENABLE HOLDERS OF CLAIMS AGAINST AN INTEREST IN THE DEBTOR TO MAKE AN INFORMED JUDGMENT ON WHETHER TO ACCEPT OR REJECT THE PLAN. ALL HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN SUMMARY AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, WHICH IS INCLUDED IN THIS DOCUMENT, OTHER EXHIBITS ANNEXED HERETO AND OTHER DOCUMENTS REFERENCED AS FILED WITH THIS COURT BEFORE OR CONCURRENTLY WITH THE FILING OF THIS DISCLOSURE STATEMENT. FURTHERMORE, THE PROJECTED FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN THE SUBJECT OF AN AUDIT. SUBSEQUENT TO THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN WILL CONTINUE TO BE MATERIALLY ACCURATE: OR (B) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.**

**ALL HOLDERS OF IMPAIRED CLAIMS AND IMPAIRED INTERESTS SHOULD READ AND CONSIDER CAREFULLY THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT AS A WHOLE, INCLUDING THE SECTION ENTITLED "RISK FACTORS" PRIOR TO VOTING ON THE PLAN. IN MAKING A DECISION TO ACCEPT OR REJECT THE PLAN, EACH HOLDER OF A CLAIM OR INTEREST MUST RELY ON ITS OWN EXAMINATION OF THE DEBTOR AS DESCRIBED IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, INCLUDING THE MERITS AND RISKS INVOLVED. IN ADDITION, CONFIRMATION AND CONSUMMATION OF THE PLAN IS SUBJECT TO CONDITIONS PRECEDENT THAT COULD LEAD TO DELAYS IN CONSUMMATION OF THE PLAN. THERE CAN BE NO**

ASSURANCE THAT EACH OF THESE CONDITIONS WILL BE SATISFIED OR WAIVED OR THAT THE PLAN WILL BE CONSUMMATED. EVEN AFTER THE EFFECTIVE DATE, DISTRIBUTIONS UNDER THE PLAN MAY BE SUBJECT TO THE SUBSTANTIAL DELAYS FOR HOLDERS OF CLAIMS AND INTERESTS THAT ARE DISPUTED.

THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL   AS CONTAINING ADEQUATE INFORMATION OF A KIND AND IN SUFFICIENT DETAIL TO ENABLE HOLDERS OF THE CLAIMS AND INTERESTS TO MAKE AN INFORMED JUDGMENT WITH RESPECT TO VOTING TO ACCEPT OR REJECT THIS PLAN. HOWEVER, THE BANKRUPTCY  COURT'S  APPROVAL  OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A RECOMMENDATION OR DETERMINATION BY THE BANKRUPTCY COURT WITH RESPECT TO THE MERITS OF THE PLAN.

NO PARTY IS AUTHORIZED BY THE DEBTOR TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATION WITH RESPECT TO THE PLAN OR REORGANIZATION SECURITIES OTHER THAN THAT WHICH   IS CONTAINED   IN   THIS   DISCLOSURE   STATEMENT.   NO REPRESENTATIONS OR INFORMATION CONCERNING THE DEBTOR, THE DEBTOR'S FUTURE BUSINESS OPERATIONS OR THE VALUE OF DEBTOR'S PROPERTIES HAVE BEEN AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH HEREIN.  ANY INFORMATION OR REPRESENTATIONS GIVEN TO OBTAIN YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH ARE DIFFERENT FROM OR INCONSISTENT WITH THE INFORMATION OR REPRESENTATIONS CONTAINED HEREIN AND IN THE PLAN SHOULD NOT BE RELIED UPON BY ANY HOLDERS OF CLAIMS AND INTEREST IN VOTING ON THE PLAN.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF   THE   BANKRUPTCY   CODE   AND NOT   IN ACCORDANCE WITH   FEDERAL   OR   STATE SECURITIES LAWS OR OTHER APPLICABLE NONBANKRUPTCY LAW. ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, INTEREST IN OR SECURITIES OF, THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT HAS BEEN PREPARED.

UNTIL THE EFFECTIVE DATE, WITH RESPECT TO THE CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED ACTIONS   (WHETHER OR NOT PENDING), THIS DISCLOSURE STATEMENT AND THE INFORMATION CONTAINED HEREIN

SHALL NOT BE CONSTRUED  AS AN ADMISSION OR STIPULATION BY ANY ENTITY, BUT RATHER AS STATEMENTS MADE IN SETTLEMENT NEGOTIATIONS GOVERNED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER RULE OR STATUTE OF SIMILAR IMPORT.

THE DISCLOSURE STATEMENT SHALL NEITHER BE ADMISSIBLE IN ANY PROCEEDING INVOLVING A DEBTOR OR ANY OTHER PARTY NOR BE CONSTRUED TO BE PROVIDING ANY LEGAL BUSINESS, FINANCIAL OR TAX ADVICE. EACH HOLDER OF A CLAIM OR INTEREST SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.

THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARY THEREOF IN THIS DISCLOSURE STATEMENT.

## II. The Disclosure Statement and the Confirmation and Requirements for Voting Confirmation Of the Debtor's Plan of Reorganization

### A. The Purpose of the Disclosure Statement

The Bankruptcy Code (Title 11 U.S.C. §101 et seq.) requires that "adequate information" be furnished all Creditors or parties in interest, consisting of an adequate disclosure by the Debtor in Possession of its historical, current, and anticipated future financial and business affairs, so that Creditors and other parties in interest can make an informed decision concerning any vote they may cast either in favor or, in opposition to, any proposed Plan. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of such claims in this case, to make an informed judgment in exercising his/her or its right to either accept or reject the Plan. A copy of the Plan is being provided with this Disclosure Statement.

**THIS OBJECTION PROCESS IS A PRE-CONDITION TO YOUR RELIANCE ON THIS DISCLOSURE STATEMENT.**

THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED TO THE BANKRUPTCY COURT FOR APPROVAL AS CONTAINING "ADEQUATE INFORMATION" AS REQUIRED UNDER THE BANKRUPTCY CODE. SUCH APPROVAL IS REQUIRED BY STATUTE AND DOES NOT CONSTITUTE A JUDGEMENT BY THE COURT AS TO THE DESIRABILITY OF THE PLAN OR AS TO THE VALUE OR SUITABILITY OF ANY CONSIDERATION OFFERED THEREBY. THE FINAL APPROVAL OF THIS DISCLOSURE  STATEMENT  WILL BE GRANTED BY THE BANKRUPTCY

COURT ONLY AFTER (i) YOU HAVE RECEIVED NOTICE OF ITS FILING AND HAVE BEEN GIVEN AN OPPORTUNITY TO BE HEARD, AND (ii) YOU DO NOT OBJECT ON THE BASIS OF ABSENCE OF "ADEQUATE INFORMATION" AND SUSTAIN YOUR OBJECTION AT THE DISCLOSURE STATEMENT HEARING.

IF YOU FAIL TO OBJECT AFTER NOTICE, YOU MAY BE FOREVER BARRED OR ESTOPPED FROM COMPLAINING OF THE CONTENTS OR LACK OF CONTENTS OF THIS DISCLOSURE STATEMENT.

YOU ARE SPECIFICALLY REFERRED TO THE TERMS AND CONDITIONS OF THE PLAN AS FILED AND YOU ARE CAUTIONED THAT THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON AS A SUBSTITUTE FOR A CAREFUL REVIEW AND ANALYSIS OF THE PLAN AND OF ALL SUPPLEMENTS AND AMENDMENTS WHICH MAY BE ALLOWED AND APPROVED. THE PLAN MAY BE AMENDED AND SUPPLEMENTED AFTER THIS DISCLOSURE STATEMENT IS FURNISHED TO YOU, UNDER CERTAIN CRITERIA SET FORTH IN THE BANKRUPTCY CODE AND PLAN.

### B. Source of Information For the Disclosure Statement

The Debtor has supplied the information in this Disclosure Statement and has made the estimation of values contained in this Disclosure Statement based on information obtained from several sources. No independent estimate of value has been made. The financial information is believed to be materially accurate and properly presented for the intended use. However, the accounting information is not now the subject of and has never been the subject of an audit by any certified public accountant or any governmental agency. Although the Debtor believes that the information contained in all financial records is reasonably and materially accurate, the Debtor does not warrant its accuracy.

### III. The Plan Confirmation Process

To be confirmable, the Plan must meet the requirements listed in §§1129(a) or (b) of the Code.  These include the requirements that: (i) the Plan must be proposed in good faith; (ii) at least one impaired class of claims must accept the plan, without counting votes of insiders; (iii) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (iv) the Plan must be feasible.   These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

Under the Bankruptcy Code, the following steps must be taken to confirm a Chapter 11 Plan of Reorganization.

## A. Solicitation of Plan

If the Court approves Debtor's Disclosure Statement, as contained herein, Debtor will forward to its creditors and other parties-in-interest the Disclosure Statement and Plan together with the Court's Order Approving Disclosure Statement, Giving Notice of Confirmation Hearing, Setting Certain Deadlines and Providing for Other Matters Concerning Confirmation of the Plan (the "Order"). The Order will schedule the hearing on the confirmation of the Plan and provide dates by which creditors, or any party-in-interest, may file an objection to the confirmation of the Plan.

## B. The Confirmation Hearing and Objections to the Plan

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the plan, at which any party-in-interest may object to confirmation of the Plan.

The date and time of the hearing on confirmation of the Plan will be set forth in a notice to each Creditor. The hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the hearing or any adjournment thereof. Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and served upon Debtor's counsel at the address listed below, together with the proof of service, on or before the date set by the Bankruptcy Court:

VILLEDA LAW GROUP
Attn: Antonio Villeda
6316 N. 10th Street Bldg B
McAllen, Texas 78504
Fax: (956) 631-9146

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

UNLESS OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

## C. Requirements for Confirmation of the Plan

At the hearing on confirmation of the Plan, the Bankruptcy Court shall determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event, the Bankruptcy Court shall enter an order confirming the Plan. To be confirmable, the Plan must meet the requirements listed in §§1129(a) or (b) of the Code. These include the requirements that: (i) the Plan must be proposed in food faith; (ii) at least one impaired class of claims must accept the Plan, without counting votes of insiders; (iii) the Plan must distribute to each creditor and equity interest holder at least as much as the

creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (iv) the Plan must be feasible. These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

The Debtor believes the Plan satisfies all of the statutory requirements of Chapter 11 of Title 11, United States Code, that the Debtor has complied or will have complied with all of the requirements of the Chapter 11 and that the proposal of the Plan is made in good faith.

### D.  Voting Rights and Requirements

If the Court approves this Disclosure Statement, each Creditor entitled to vote on the Plan will be provided with a ballot to be used for voting to accept or reject the Plan, together with a postage paid return envelope.

In order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be completed and returned to the Bankruptcy Court prior to the hearing before the Bankruptcy Court requiring its approval of the Plan or at such other time as the Bankruptcy Court may set.  The time and date of the hearing will be set forth in a notice to the Creditors.

Whether or not the Creditor entitled to vote expects to be present at the hearing, each Creditor is urged to complete, date, sign and properly mail the ballot to the following address:

> U. S. BANKRUPTCY COURT CLERK
> Southern District of Texas - McAllen Division
> United States Courthouse
> 1701 West Business Highway 83, 10th Floor
> McAllen Texas, Texas 78501

With a copy to:

> VILLEDA LAW GROUP
> Attn: Antonio Villeda
> 6316 N. 10th Street Bldg B
> McAllen, Texas 78504
> Fax: (956) 631-9146

Any Creditor whose claim is impaired under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtor (and such claim is not scheduled as disputed, contingent or unliquidated), or (ii) it has filed a proof of claim on or before the 1st date set by the Bankruptcy Court for such filings.  Any Claim as to which an objection has been

filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allowed the claim in an amount which it deems proper for the purpose of accepting or rejected the Plan upon application by the Creditor.  Such application must be heard and determined by the Bankruptcy Court at such time as specified by the Bankruptcy Court.  A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Under Section 1124 of the Bankruptcy Code, a class of Claims or Equity Security interests is impaired under a Chapter 11 plan unless, with respect to each Claim or interest of such class, the Plan:

1.      Leaves unaltered the legal, equitable, contractual rights of the holder of such Claim or Equity
Security interest; or

2.      Notwithstanding any contractual provision applicable law that entitles the holder of a Claim or Equity Security interest to receive accelerated payment of his Claim or Equity Security interests after the occurrence of a default:

a.      Cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default that consists of a breach of any provision relating to the insolvency or financial condition of the Debtor at any time before the closing of the case, the commencement of a case under the Bankruptcy Code, or the appointment of or taking possession by a trustee in a case under the Bankruptcy Code;

b.      Reinstates the maturity of such Claim or Equity Security interest as it existed before the default;

c.      Compensates the holder of such claim or Equity Security interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

d.      Does not otherwise alter the legal, equitable, or contractual rights to which such Claim or Equity Security interest entitles the holder of such claim or Equity Security interest; or

e.      Provides that, on the Plan Effective Date, the holder of such Claim or Equity Security interest, received, on account of such Claim or Equity Security interest, cash equal to:

(i)      With respect to a Claim, the allowed amount of such Claim; or

(ii)      With respect to an Equity Security interest, if applicable, the greater of:

(A)      Any applicable fixed liquidation preference; or

(B)      Any fixed price at which the Debtor, under the terms of the security, may redeem the security.

The Bankruptcy Code defines acceptance of a Plan by a class of Creditors or Equity Security interest holders as acceptance by holders of two-thirds (2/3) in dollar amount and a majority in number of the Claims or Equity Security interests of that class which actually cast ballots for acceptance or rejection of the Plan; i.e., acceptance takes place only if sixty-

six and two thirds percent (66-2/3%) in amount of Claims and Equity Security interests in each class and more than fifty percent (50%) of Claims or Equity Security interests voting in each class cast their ballots in favor of acceptance.

The Classification of any manner of satisfying all Claims under the Plan take into consideration the fact that the Debtor may be joining obligor with another Person or Persons with respect to the same obligation.  All Claims against the Debtor based upon any such guarantees or joint obligations shall be discharged in the manner provided in the Plan.

### E.  Confirmation Hearing
### (The Court  May Approve This Plan and Limit Creditors' Legal Rights)

The Court will consider only written objections and ballots that are timely filed.  If no objections are filed (or if all objections are overruled by the Court) and if at least one class of creditors will be bound, even if a Creditor did not vote and even if a Creditor voted against the Plan.   This means that the Creditor will not be allowed to collect its claim against Debtor, except as provided in this Plan.

### F.  Cramdown and Absolute Priority Rule

In the event that any impaired class of claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired class which has not accepted the Plan, the Plan, "does not discriminate unfairly" and "is fair and equitable".  A Plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class received more than it is legally   entitled to receive for its claims or Equity Security interest.   "Fair and Equitable" has different meanings for secured claims and unsecured claims.

With respect to a secured claim, fair and equitable means either (1) the impaired secured creditor retains its liens to the extent of its allowed claims and received deferred cash payments at least equal to the allowed amount of its claims and received deferred cash payments at least equal to the value of such Secured Creditor's interest in the property securing its liens, or (2) property subject to the lien of the impaired secured creditor is sold free and clear of that lien, with that lien attaching to the proceeds of the sale, and such lien proceeds must be treated in accordance with clause (1) and (3) hereof; or (3) the impaired secured creditor realizes the "indubitable" equivalent of its claim under the Plan.

In the event one or more classes of impaired claims rejects the Plan, the Bankruptcy  Court  will determine at the hearing for confirmation of the Plan whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of claims.  If the Bankruptcy Court determines that the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of claims, the Bankruptcy Court may confirm the Plan over the objections of any impaired class.

The balance of this section only applies if a class of unsecured claims does not accept the Plan.  In that instance, Debtor seeks confirmation of the Plan pursuant to 11 U.S.C. §1129(b).

### IV.  Summary of the Debtor's Operations and Bankruptcy Estate

### A. Background

The Debtor is in the business of transporting persons to hospitals and other medical facilities. The Debtor filed a voluntary petition on November 19, 2018, which commenced this Chapter 11 bankruptcy case.  The filing of the Petition constituted an order for bankruptcy relief under §301 of the Code. Immediately upon the filing of the Petition, an automatic stay commenced pursuant to §362(a) of the Code. The meeting of creditors under §341(a) of the Code was held on December 21, 2018. Said meeting was concluded on that date. The Debtor's representative attended and participated in said meeting.

### B.  Description of Debtor's Assets

The Debtor filed schedules of all of its assets and liabilities on December 5, 2018. Complete copies of the schedules are available from the Clerk of the Court.  The primary assets of the bankruptcy estate and their estimated values are:

Cash and cash Equivalents: **$  421,980.19**[1]

Accounts Receivable: **$1,392,762.52**[2]

Office Furniture, Equipment & Supplies: **$    10,227.00** (Schedules)

Vehicles: $   561,780.00 (Schedules)
Machinery, Fixtures & Equipment (shop): $      3,437.00 (Schedules)
**Total Vehicles & Machinery:** **$565,217.00**

Notes Receivable (Hidalgo County Emergency Services District 4): **$    20,000.00** (Schedules)

Dual Eligibility Claim: **$  900,000.00** (Schedules)

**Total Assets:** **$3,310,186.71**

### C.  Pending Litigation & Claims

---

[1] Based on Debtor's Monthly Operating Report for January of 2019.
[2] See Section "VII," below.

There are no pending lawsuits to which the Debtor is a party, as of the filing this Disclosure Statement and Plan.

The Debtor has several causes of action, as disclosed in its schedules, including: for accounts receivable and also a dual eligibility claim against the State of Texas with an estimated value of $900,000.00.

## D.  Events Leading Up to Bankruptcy

Debtor was formed as a Texas corporation on or about March 12, 1996, by filing its Articles of Organization with the Texas Secretary of State. The Debtor's shareholder is Candelario Ontiveros, whom is now deceased and, upon information and belief, the spouse thereof Veronica Lyzette Ontiveros is the present shareholder under the Last Will of Candelario Ontiveros. The Debtor filed this bankruptcy case to negotiate reasonable monthly payments with its creditors, including but not limited to the IRS.

## E.  Operations in Bankruptcy

The Debtor has continued to operate throughout the bankruptcy as a debtor-in-possession.  The Debtor has retained and intends to retain its shareholder. The Debtor has complied with its duties as debtor-in-possession.

## F.  Significant Events and Orders Entered During the Bankruptcy Case

The following significant events occurred and orders were entered during the bankruptcy case:

- On November 19, 2018, the Debtor filed this Bankruptcy case [Doc. 1]
- On November 20, 2018, the Debtor filed the Application to Employ Attorneys [Doc. 2] and Motion to Use Cash Collateral [Doc. 3]
- On November 28, 2018, the Notice of Chapter 11 Bankruptcy Case [Doc. 8] issued which sets out various important deadlines and dates, including to schedule the creditor's meeting.
- On November 28, 2018, the Court entered the Order for Chapter 11 Status Conference [Doc. 9] scheduling the status conference for December 7, 2018.
- On November 28, 2018, the Court entered the Order for hearing on Appointment of Patient Care Ombudsman [Doc. 10] scheduling the hearing for December 7, 2018.
- On December 4, 2018, the Court entered its Order Granting Debtor's Motion to Extend Time to File Schedules [Doc. 18].
- On December 5, 2018, the Debtor filed the Amended Petition [Doc. 19] and bankruptcy schedules [Doc. 20].

- On December 6, 2018, Candelario Ontiveros died. At the time of his death, Candelario Ontiveros was the sole shareholder of the Debtor.
- On December 7, 2018, the Court held a Status Conference and entered its Chapter 11 Status Conference Order [Doc. 25].
- On December 7, 2018, the Court agreed to re-set the hearing on Appointment of Patient Ombudsman to December 19, 2018.
- On December 7, 2018, the Court entered its Order Granting Oral Motion for Permission to Transfer Funds from Lock-Box Deposit Accounts at Wells Fargo Bank to Debtor –in-Possession account at Wells Fargo Bank [Doc. 26].
- On December 13, 2018, the Court entered its Order Approving Application to Employ Villeda Law Group as attorneys for Debtor-in-Possession [Doc. 33].
- On December 14, 2018, the Court entered the Order Granting Emergency Motion for continued Use of Specific Deposit Accounts at Lone Star National Bank and for Permission to Change the Styling of Same Accounts to Debtor-In-Possession [Doc. 36].
- On December 19, 2018, the Court conducted a hearing on Appointment of Ombudsman and determined that an Ombudsman was not necessary at that time.
- On December 19, 2018, the Court entered said Order on Appointment of Ombudsman [Doc. 40].
- On December 21, 2018, the meeting of creditors was held [see docket entry at 1/10/2019]
- On January 4, 2019, the Court entered its Order Approving Application to Employ Morin Business Services, LLC [Doc. 45].
- On January 4, 2019, the Court entered its Order Approving Application to Employ Special Counsel [Doc. 46].
- On January 4, 2019, the Court entered its Order Approving Application to Employment of Accountant [Doc. 47].
- On January 11, 2019, the Court entered its Order Approving Villeda Law Group's First Application for Compensation of Attorney Fees, granting fees of $17,794.75 and expenses of $1,717.00 [Doc. 53].
- On February 21, 2019, the Debtor filed its Monthly Operating Report for Filing Period of January of 2019 [Doc. 62]
- No adversary proceedings have been filed.

## G.  Preferential or Other Avoidable Transfers

Debtor does not believe there are any preferential or avoidable transfers.

## H.  Sources of Income for Purposes of the Plan

The Debtor earns income from transporting persons to hospitals and other medical facilities. The current monthly income is described as follows:

| Description of Source of Income | Monthly Gross Income |
|---|---|
| Income from Services Provided by the Debtor | $1,403,014.96[3] |
| Monthly Operating Expenses[4] | $1,179,502.67[5] |
| Monthly Net Income | $223,512.29 |
| Projected Monthly Plan Payment: | $24,200.12 |
| Overage After Projected Plan Payment: | $199,312.17 |

True and correct copies of the monthly operating reports filed in this bankruptcy to date are attached as Exhibit "A". A spreadsheet with the annual income projections and projected Plan Payments is attached as Exhibit "B".

## V.  General Description of Reorganization

The Plan provides for the implementation of a repayment plan from the income generated from the Debtor's assets. The Debtor will pay the IRS an agreed-upon amount over a 5-year term, as described in greater detail below. With respect to other creditors (identified below), the Debtor intends to pay 100% of the debt (secured and unsecured). With respect to all leases (e.g., equipment leases, vehicle leases) with the Debtor and with respect to all executory contracts (see Table in Section "XII," below), they will be unaffected by this bankruptcy; therefore, any amount owed to you on leases and executory contracts is unaffected by this bankruptcy and will continue to be owed to you by the Debtor. The Debtor's shareholder(s) will retain ownership and operation of Debtor, post-confirmation.

## VI.  Definitions of Terms Used in Disclosure Statement and Plan

For the purpose of the Disclosure Statement and Plan, the following definitions shall apply:

---

[3] This is the "total cash receipts" figure reported in the Debtor's monthly operating report for January of 2019.

[4] Said expenses include the leases (e.g., equipment leases, vehicle leases) and other contracts described in Section "XII," below.

[5] This is the "total cash disbursements" reported in the Debtor's monthly operating report for January of 2019.

Administrative Claim:  means any cost, claim or expense of administration in the Chapter 11 case which has been allowed and entitled to priority in accordance with the provisions of § 330, § 503(b) and § 507(a) of the Code, including, any actual and necessary expenses of preserving the Debtor's estate including, without limitation, all fees and expensed to the extent allowed by the Court under § 330, § 503(b) under Chapter 123 of Title 28, United States Code, to the extent incurred by the Debtor, during the case and after confirmation regarding Claims Allowance, avoidance actions, or the like (whether or not Allowed).

Allowance Date: means the date an order of the Court Allowing a Claim in the Case has become a Final Order and non appealable and no appeal therefore is pending.

Allowed Claim:  shall be any Claim against the Debtor, provided:  (a) proof shall be in the form of a Proof of Claim which was timely and properly filed or, if no proof of Claim was filed, which has been listed by the Debtor on the Schedules as liquidated in amount and not disputed or contingent and (b) in either case, a Claim as to which no objection to the Allowance thereof has been interposed on or before the applicable period of limitation fixed by the Plan, the Code, the Rules of the Court, or order of the Court; or as to which any objection is determined in favor of a claimant, and whether or not Allowed by an order of the Court, to the extent incurred by the Debtor and not paid from sources other than Property of the Estate.   Unless otherwise specified herein or by order of the Court, "Allowed Claim" shall not include any informal claim, nor interest on any Plan.  Unless a claim is an Allowed Claim, such Claim shall not be entitled to participate in any distribution under the Plan, and failure of any Claimant to take the necessary action to secure Allowance shall bar the existence of any liability of the Debtor or parties Discharged to that Claimant, and Claimant rights, if any, shall be Discharged by the confirmation of this Plan as provided by the Plan, applicable law and Bankruptcy code.

Allowed Secured Claim: means an Allowed Claim arising on or before the petition date that is secured by a valid and perfected lien upon Property of the Estate; excluding property subject to avoidable transfers which shall be deemed not an Allowed Secured Claim or an Allowed Claim for which the Debtor asserts a set off under Section 553 of the Code; to the extent of the value (which is set forth in the Schedules or if objection is made timely to value, either agreed by the Debtor pursuant to the Plan, in writing, or in the absence of an agreement, has been determined in accordance with Section 506(a) or §1111(b) of the Code at or prior to Confirmation Date) of the interest of the holder of such Allowed Claim in Property of the Estate.  That portion of any such Secured Claim exceeding the value of security held therefore shall be a Deficiency Claim unless expressly modified by the Plan.

Avoidance Action:  shall mean a cause of action assertable by the Debtor or its successors pursuant to sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

<u>Bankruptcy Code:</u>  means the Bankruptcy Code of 1978 as contained in Title 11, U.S.C. § 101 et seq. and the amendments thereto.  All references to any statute in this plan are references to the Bankruptcy Code as defined therein.

<u>Bar Date:</u>  means the deadline for filing proofs of claims against the Debtor or any other  date established pursuant to an Order of the Court with respect to any other creditor; or, with respect to any allowed Administrative Claim or Claim arising with respect to rejection of an executory contract, such other date as this Plan, the Court of the Bankruptcy Code may establish pursuant to the Plan (or other Order) and after which any proof of Claim files will not be Allowed, and the later filing of which will have no effect on the distributions provided in this Plan or effect the discharge or re-judicata effect of any discharge or injunction provided in the Plan.  No informal filing or other document shall constitute a Proof of Claim except as provided in this Plan.

<u>Claim:</u> shall mean
   1.   any "right to payment" either directly from the Debtor or Debtor in Possession or indirectly as a result of the Debtor's liability to third parties arising out of contract (e.g. a joint guaranty), tort (e.g. subordination), legal tort (e.g. equitable claim) or arising in any respect as a tax, tax penalty or interest or charge or imposition by a Governmental Unit resulting from a pecuniary or non-pecuniary loss by any Governmental Unit, that arose on or before the confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, contested, uncontested, legal equitable, secured, or Unsecured.
   2.   or any right under § 502(h)
   3.   or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, contested, uncontested, secured, or Unsecured;
   4.  or any right to a remedy in equity of at law arising out of violation of any rule or regulation of a Governmental Unit and any and all priority claims of every nature; and
   5.   or any right to look to the community property made property of the estate by 11 U.S.C. § 541 and the marriage of the Debtor to his non-filing spouse.

<u>Class or Classes:</u> means the particular Class designated in this Plan pursuant to Bankruptcy Code Sections 1122 and 1129 and in which Creditors' Claims may be included as provided in this Plan.

<u>Chapter 11 Case:</u>  means the Chapter 11 case now pending in the United States Bankruptcy Court for the Southern District of Texas, MED CARE EMERGENCY MEDICAL SERVICES, INC., filed in the U.S. Bankruptcy Court, Southern District of Texas, McAllen Division, having been commenced pursuant to 11 U.S.C. § 101, et seq.

Confirmation Order: means the signing and entry of the Order Confirming Plan entered pursuant to U.S.C. § 1129, and is deemed to include in the Plan all provisions of such Order or any subsequent Amended Order confirming the Plan, any authorized Modifications and providing for the continued operations of the Debtor and approval of this Plan.

Confirmation Date: shall mean the date set by the Court pursuant to 11 U.S.C. §1128 for the hearing on Confirmation of the Plan.

Contested: when used with respect to a Claim, shall mean a Claim against the Debtor (i) that is listed in the Debtor's schedule of liabilities as disputed, contingent, or unliquidated;   (ii) that is listed in the Debtor's schedule of liabilities as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of claim exceeds the scheduled amount;   (iii) that is not listed in the Debtor's schedule of debts, but as to which a proof of claim has been filed with the Bankruptcy court: or (iv) as to which an objection has been filed.

Court:  shall mean The United States Bankruptcy Court for the Southern District of Texas, McAllen Division, acting in this case.

Creditor or Claimant:  shall mean any entity that has a claim against the Debtor that arose at the time of or before the filing of the petition in this case as defined in § 101(4) of the Bankruptcy Code.

Debt:  shall mean any liability on a Claim held by any Person, Claimant or Subordinate Unsecured
Claimant.

Debtor:  shall mean MED CARE EMERGENCY MEDICAL SERVICES, INC.

Deficiency Claim: means Unsecured Claims remaining after deducting the full value of the collateral of the Secured Claimant.

Discharge: means the release, satisfaction and full and final settlement of a Claim on any Debt as specifically provided in this Plan with respect to the Discharged party.

Distributions Under the Plan: means except as otherwise provided herein or as ordered by the Bankruptcy Court, Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the first day of the month following one full month after the Effective Date, provided however, that should such Allowed Claims be paid in the ordinary course of business, the distribution date shall be such date the Allowed Claim becomes payable under the terms of any contract or agreement or applicable non-bankruptcy law.

Effective Date: shall mean the fifteenth (15th) day following the day of the entry of the Order confirming plan.

Estate  Assets or Property of the Estate: shall mean the estate created by 11 U.S.C. § 541 on the commencement of the Chapter 11 Case consisting of all property owned by the Debtor upon the date of the filing of the Chapter 11 Case, including personal and real property, all accounts and accounts receivable,  and  the  right  to  recover any Debt from any third party or Creditor, and the income or proceeds of Property of the Estate.

Final Decree:   means the last order of the Court entered in accordance with Bankruptcy Rule 3022 pursuant to 11 U.S.C. § 350.

Final  Order or Final  Judgment: shall mean an order of the Court which, not having been appealed, reversed, modified or amended and not having been stayed or the time to appeal from which or to seek review or rehearing of which having expired, has become conclusive of all matters adjudicated thereby and is in full force and effect.

Governmental Unit:   shall mean "governmental unit" as defined in 11 U.S.C. § 101 and shall include any taxing unit and any administrative agency of any such Governmental Unit.

Objection:   shall mean a contested matter, adversary proceeding, or any counterclaim or cross-action in any adversary proceeding initiated for the purpose of objecting to any Claim of a Creditor and shall include any action brought by a Creditor or removed to the Court after Confirmation of this Plan which deals with any Claims treated in, or arising under, or released or Discharged under this Plan or which may affect the administration of this Plan.

Payment  in Full and Paid in Full: means the receipt by or for the account of a Creditor  of consideration the value of which equals the amount of its Allowed Claim or the amount provided in this Plan for payment to such holder of the Allowed Claim.

Person:   means an individual, corporation, limited liability company, partnership, joint venture, trust, estate, unincorporated organization, or a Governmental Unit or any agency or political subdivision thereof.

Petition Date: means November 19, 2018, the date the Voluntary Petition was filed by the Debtor.

Plan:   means this Plan of Reorganization is subject to confirmation by voluntary petition under Chapter 11 of the Bankruptcy Code and now pending in this Court.

Proof  of Claim:   shall mean the official form provided for the written filing proofs of a Debt or Claim providing for the inclusion of documentary evidence or written explanation which has been substantially completed and timely filed unless filing is not required by this

Plan or the Bankruptcy Code (regarding undisputed and liquidated Claims scheduled as such) and which timely filed Proof of Claim has been signed under the penalty of perjury as provided in such official form.

<u>Priority Tax Claim:</u> means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in Sections 502(j) and 507 (a)(8) of the Bankruptcy Code.

<u>Pro Rata Share:</u> means the amount which is the result of multiplying the net proceeds or dividend available for distribution at any given time to a Class of Claimants by that fraction in which the numerator is the Allowed amount of the claim of the particular Creditor of the names Class and the denominator is the total of the Allowed amounts of all the Creditors' Allowed Claims of such Class.

<u>Property of The Estate:</u>   shall mean the estate created by 11 U.S.C. § 541 on the commencement of the Chapter 11 case including all property owned by the Debtor upon the date of filing of the chapter 11 case.

<u>Professional Fees:</u> means those Allowed Claims for reasonable and necessary professional fees which are Allowed pursuant to this Plan and/or the 11 U.S.C. § 330, 503(b)(D) and entitled to priority status as administrative expenses pursuant to 11 U.S.C. §507(a)(1).

<u>Rule(s) or Rules of the Court:</u> means the rules of procedure in bankruptcy cases applicable to cases pending before the Court, and if made applicable, as amended from time to time, including Rules in effect, if any, regarding Chapter 11 cases.

<u>Schedules or Schedule:</u>   means the Schedules and Statement of Financial Affairs filed  in  this Bankruptcy case by the Debtor, including the list of assets, Creditors, Exempt Property, and including any amendments and/or supplements thereto up to and including the Confirmation Date.

<u>Settled Claim or Settlement with respect to a Claim:</u>   means a claim that is no longer contested or, whether or not an Allowed Claim, is the subject of a compromise between the Debtor and the respective creditor regarding payment and additional payments from other than Property of the Estate.

<u>Secured Creditor:</u> means a creditor holding an Allowed Secured Claim, and may include any valid and enforceable Judgment Lien released herein.   Including but not limited to: statutory liens, other involuntary liens or mortgages, and voluntary liens.

<u>Subordinated Creditors:</u> means Creditors whose Claims are subordinated: (i) in accordance with 11
U.S.C. § 510 or §1129(b) by Final Order; or (ii) pursuant to this Plan.

Substantial Consummation:

 (a) All or substantially all of the property proposed by the Plan to be transferred has been transferred;

 (b) the Debtor or any successor to the Debtor under the plan has assumed operation of the Debtor's business or assumed possession of all or substantially all of the property dealt with by the plan; and

 (c) distributions under the Plan have commenced.

Termination Date: means the day on which all payments due under this Plan have been made.

Unsecured Claim: shall mean a Claim or the part of a claim which is not secured by a lien, security interest or other charge against or interest in Property of the Estate in which Debtor has an interest and shall include a Claim arising out of the rejection of any executory contract under 11 U.S.C. § 365 and deficiency claim, administrative claim or any claim asserted by an affiliate or insider to the Debtor, and excluding any interest, attorney's fees, costs of collection or the like not earned and due on the Petition Date and, with respect to distributions, only to the extent constituting and Allowed Unsecured Claim under this Plan.

 A term used in this Disclosure Statement and Plan, not otherwise defined herein but used in the Code, shall have the definition assigned to such term in the Code.

## VII. Debtor's Plan for Payment of its Debts

### A. Summary of Plan of Reorganization

 The Plan provides for the implementation of a repayment plan from the income generated from the Debtor's assets. With respect to all creditors (identified below), the Debtor intends to pay 100% of the debt (secured and unsecured). The IRS will be paid in full the agreed-upon amount, as described in greater detail below. With respect to all leases (e.g., equipment leases, vehicle leases) with the Debtor and with respect to all executory contracts (see Table in Section "XII," below), they will be unaffected by this bankruptcy; therefore, any amount owed to you on leases and executory contracts is unaffected by this bankruptcy and will continue to be owed to you by the Debtor. The Debtor's shareholder(s) will retain ownership and operation of Debtor, post-confirmation. The Debtor will retain all Property of the Estate post-confirmation, subject to the certain liens, security interests, and equitable interests that are specifically set forth in this Plan.

### B. Classification and Treatment of Classes under the Plan

**Regarding Un-Withdrawn Proofs of Claims that Have Been Paid Post-Petition in Full**

The following proofs of claim have been paid in full, post-petition, by the Debtor and, yet, the claimants have, to date, failed to withdraw their proofs of claim, despite the Debtor's request that they do so:

- ▪ McKesson Medical-Surgical Minnesota Supply, Inc. [Claim No. 10 & Claim No. 11]

As said claims have been paid in full, said claimants shall receive nothing under the Plan.

**Administrative Claims**

Administrative Claims are those arising under 11 U.S.C. § 507(a)(2). Unless otherwise agreed by the holders of these Claims, these Claims will be paid in cash, in full, on or before the Effective Date, or when such Claims become Allowed Claims. ALL ADMINISTRATIVE CLAIMS (other than the US Trustee) WILL BE REQUIRED TO FILE AN ADMINISTRATIVE CLAIM PRIOR TO THE ADMINISTRATIVE BAR DATE. Administrative Claims are comprised of the following categories of Claims:

<u>**Class 1**</u>:   U.S. Trustee Fees: All allowed claims as allowed pursuant to 11 U.S.C. § 503. Treatment:Any outstanding Trustee's Fees shall be paid on the effective date of the plan.

<u>**Class 2**</u>:   Attorney/Professional Fees: First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under Chapter 123 of Title 28.  All allowed Administrative Claims, as that term is defined herein and in 11 U.S.C. §507 (a)(1), including fees for services  rendered  and  expenses incurred by Court-approved counsel for the Debtor or other Professionals employed by the Debtor, and any expenses provided for under 28 U.S.C. §1930.

These claims are:

   **1.   Attorney  fees and costs: Villeda Law Group** employed by Debtor (see ECF # 33, Order Approving Application to Employ Attorneys) for services rendered and expenses incurred. These payments will be made pursuant to the Court's approval of the fee applications filed by Debtor's attorney.

   **2. Accountant's fees: Rolando M. Flores, CPA**, accountant employed by the Debtor (see ECF # 47, Order Approving Application of Employment of Accountant). These payments will be made pursuant to the Court's approval of the fee applications filed by said accountant.

   3.   There are no other administrative claims.

Objections to timely filed applications of Professionals for compensation or reimbursement of expenses and/or other Administrative Expense Claim must be filed and served no later than the sooner of: (i) twenty-one (21) days after the application is filed; or (ii) twenty-one (21) days after the Administrative Claims Bar Date.

Administrative Claims shall be paid in full by the Debtor on the later of:   (i) the Effective Date; (ii) fifteen (15) days after the date when such Administrative Claim is Allowed by the Court; or (iii) as agreed by the Administrative Claimant and the Debtor.

Treatment:   All of the professional fees will be paid according to the orders entered by the Bankruptcy Court authorizing such payments. All amounts owed for the administrative costs incurred during the pendency of the bankruptcy case, and approved by the Court, will be paid within 30-days from date of entry of the order confirming the Plan.

**Class 3**: The secured claim of Sterling National Bank successor to Advantage Funding Commercial Capital Corp ("Advantage Funding") in the total amount of $192,258.80 [Claim 12] of which $150,000.00 is secured and $42,258.80 is unsecured. Attached to Advantage Funding's claim [Claim 12] is a promissory note and security agreement dated May 4, 2016 (the "Note" and "Security Agreement") in the original principal amount of $223,725.00 payable to Advantage Funding. This creditor is unimpaired.

Treatment: Debtor shall continue remitting monthly payments of $4,409.00, as required by the Note, to Advantage Funding until the Note matures on March 4, 2021, when Debtor will remit any remaining principal that is due (if any) and any accrued but unpaid interest (if any) to Advantage Funding. Advantage Funding shall retain its security interest in the vehicles that are described in the security agreement dated May 4, 2016 that is attached to Advantage Funding's claim [Claim 12]. With respect to the priority of said security interest, the priority shall remain unaffected by this Bankruptcy; the priority shall remain the same post-confirmation as it was pre-petition. All terms under the Note and Security Agreement shall not be affected, amended, supplemented or revised by the confirmation of this Plan.  A default under the Note and Security Agreement shall be defined and governed by those documents, even after confirmation of this Plan.

**Class 4**:  The  secured  claim of Ally Bank in the total amount of $26,195.91  [Claim 5]. Attached to Ally Bank's claim [Claim 5] is a Motor Vehicle Retain Installment Sales Contract dated August 31, 2016 (the "Contract") in the original principal amount of $37,644.11. This creditor is unimpaired.

Treatment: Debtor shall continue remitting monthly payments of $601.92, as required by the Contract, to Ally Bank until the Note matures on January 17, 2023, when Debtor will remit any remaining principal that is due (if any) and any accrued but unpaid interest (if any) to Ally Bank. Ally Bank shall retain its security interest in the vehicle that is described in the Contract that is attached to Advantage Funding's claim [Claim 5]. With respect to the

priority of said security interest, the priority shall remain unaffected by this Bankruptcy; the priority shall remain the same post-confirmation as it was pre-petition. All terms under the Contract shall not be affected, amended, supplemented or revised by the confirmation of this Plan.  A default under the Contract shall be defined and governed by the Contract, even after confirmation of this Plan.

**Class 5**:  The  secured  claim of Ally Bank in the total amount of $27,682.00  [Claim 6]. Attached to Ally Bank's claim [Claim 6] is a Motor Vehicle Retain Installment Sales Contract dated August 31, 2016 (the "Contract") in the original principal amount of $39,779.76. This creditor is unimpaired.

Treatment:  Debtor shall continue remitting monthly payments of $636.07, as required by the Contract, to Ally Bank until the Note matures on January 17, 2023, when Debtor will remit any remaining principal that is due (if any) and any accrued but unpaid interest (if any) to Ally Bank. Ally Bank shall retain its security interest in the vehicle that is described in the Contract that is attached to Advantage Funding's claim [Claim 6]. With respect to the priority of said security interest, the priority shall remain unaffected by this Bankruptcy; the priority shall remain the same post-confirmation as it was pre-petition. All terms under the Contract shall not be affected, amended, supplemented or revised by the confirmation of this Plan.  A default under the Contract shall be defined and governed by the Contract, even after confirmation of this Plan.

**Class 6**:  A  secured  debt of Signature Financial LLC ("Signature Financial"), the total balance of which is believed to be $52,500.00 as of November 19, 2018, which is apparently secured by the following vehicle, 2016 Ford E-350 Transit Osage - Type II Ambulance - VIN# 1FDBW2XG0GKB03340 ("Vehicle"), based on the contract dated February 10, 2017 (the "Contract") in the original principal amount of $68,475.00. This creditor is unimpaired.

Treatment:  Debtor shall continue remitting monthly payments of $1,425.00, as required by the Contract, to Signature Financial until the Contract matures on March 20, 2022, when Debtor will remit any remaining principal that is due (if any) and any accrued but unpaid interest (if any) to Signature Financial. Signature Financial shall retain its security interest in the Vehicle. With respect to the priority of said security interest, the priority shall remain unaffected by this Bankruptcy; the priority shall remain the same post-confirmation as it was pre-petition. All terms under the Contract shall not be affected, amended, supplemented or revised by the confirmation of this Plan.  A default under the Contract shall be defined and governed by the Contract, even after confirmation of this Plan.

**Class 7**:  A  secured  debt of Signature Financial LLC ("Signature Financial"), the total balance of which is believed to be $52,500.00 as of November 19, 2018, which is apparently secured by the following vehicle, 2016 Ford E-350 Transit Osage - Type II Ambulance - VIN# 1FDBW2XG0GKB00101 ("Vehicle"), based on the contract dated

February 10, 2017 (the "Contract") in the original principal amount of $68,475.00. This creditor is unimpaired.

Treatment:  Debtor shall continue remitting monthly payments of $1,425.00, as required by the Contract, to Signature Financial until the Contract matures on March 20, 2022, when Debtor will remit any remaining principal that is due (if any) and any accrued but unpaid interest (if any) to Signature Financial. Signature Financial shall retain its security interest in the Vehicle. With respect to the priority of said security interest, the priority shall remain unaffected by this Bankruptcy; the priority shall remain the same post-confirmation as it was pre-petition. All terms under the Contract shall not be affected, amended, supplemented or revised by the confirmation of this Plan.  A default under the Contract shall be defined and governed by the Contract, even after confirmation of this Plan.

**Class 8:** Internal Revenue Service. This Agreement shall consist of the Claims of the Internal Revenue Service.  The Claims in this class total $1,202,456.10, and the Claims consist of:

- Internal Revenue Service's Priority Claim:   $812,252.69 comprised of $780,441.38 in tax and $31,811.31 in interest.

- Internal Revenue Service's General Unsecured Claim:  $390,203.41, all of which comprises penalty,

  Treatment:   Pursuant to an agreement reached by the Debtor and the Internal Revenue Service, with respect to this Priority Claim of $812,252.69, the Debtor will pay the claim of $812,252.69 at six (6) percent interest in 60 monthly installment payments of $15,703.13. The monthly payments will begin thirty days from the confirmation date. Should the Debtor be unsuccessful in repaying the IRS priority claim in full, pursuant to this Agreement, the penalties will be added back to the IRS's priority claim.

  Treatment:  The General Unsecured Claim totals $390,203.41.  The IRS will agree to waive the $390,203.41which is comprised of all penalty as long as the Debtor is successful in full paying the total amounts due for the Priority Claim. Should the Debtor be Unsuccessful in repaying the IRS Priority Claim in full, pursuant to this Agreement, the General Unsecured Claim in the amount of $390,203.41 will be added back to the IRS's claim and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. "Unsuccessful" means that there is an Uncured Default following the notice and cure procedure described below in "(ii)."

  Payments must be mailed to:
  Internal Revenue Service

ATTN:  Keri Templeton
300 East 8th Street, Stop 5026AUS
Austin, Texas 78701

Additionally:

(i)     The debt owed by the Debtor to the Internal Revenue Service is a nondischargeable debt, except as otherwise provided for in the Bankruptcy Code, and that if the Debtor should commit an Uncured Default, the Internal Revenue Service is not subject to the provisions of the Bankruptcy Code so that the Internal Revenue Service can take whatever actions are necessary to collect said debt in the event of an Uncured Default; in the event of an Uncured Default, the federal tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case.  In the event of an Uncured Default, the liens continue to be enforceable against all of the Debtor's property under federal law.

(ii)    A failure by the Debtor to make a payment to the Internal Revenue Service pursuant to the terms of the Plan shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the fifteenth (15th) day of each month.  If there is a default, the Internal Revenue Service must send written demand for payment, and said payment must be received by the Internal Revenue Service within fifteen (15) days of the date of receipt of the demand letter.  The Debtor can receive up to three (3) notices of default from the Internal Revenue Service; however, after the third (3rd) consecutive notice of default from the Internal Revenue Service (an **"Uncured Default"**), said third (3rd) notice of default may not be cured, and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.  These default provisions pertain to the entire claims of the Internal Revenue Service; said "claims" are comprised of: the Priority Claim and, in the event that payment thereof is Unsuccessful, the Unsecured General Claim.

All notices must be mailed and faxed to:
Med Care Emergency Medical Services, Inc.
P.O. Box 6767
McAllen, Texas 78502
Fax 956-213-8071

(iii)   The Internal Revenue Service is bound by the provisions of the confirmed Plan and is barred under Section 1141 of the Bankruptcy Code from taking any collection actions against the Debtor for pre-petition claims during the duration of the Plan (provided there is no Uncured Default as to the Internal Revenue Service).  The period of limitations on collection remains suspended under 26 U.S.C. § 6503(h) for the tax periods

being paid under the Plan and terminates on the earlier of (1) all required payments to the Internal Revenue Service have been made; or (2) thirty (30) days after the date of the demand letter (described above) for which the Debtor failed to cure the default.

(iv)    The Debtor's failure to remain current on its ongoing tax obligations shall be an event of default under the terms of the Plan, subject to the notice and cure period. If the Debtor fails to file or pay any ongoing federal tax return/liability by the due date of such return, then the United States may, declare that the Debtor is in default of the Plan, subject to the notice and cure period.  In order to declare a default under this paragraph, the Internal Revenue Service shall follow the notice and cure procedure described in "(ii)" above.

(v)    Internal Revenue Service remedies upon default:  Upon any Uncured Default by the Debtor, the Internal Revenue Service may accelerate its allowed pre- and post-petition claims (and any future administrative claims), and declare the outstanding amounts of such claims to be immediately due and owing. Upon any Uncured Default by the Debtor, the Internal Revenue Service may pursue any and all available state and federal rights and remedies as provided by law without further order of this Court.

(vi)    The Internal Revenue Service will also agree to withhold collections of the trust fund recovery penalty assessment against the responsible officers. This agreement only encompasses the tax periods involved in the confirmed plan.  The forbearance of collection efforts by the Internal Revenue Service does not preclude any action by the IRS to file liens or otherwise to perfect a security interest against the responsible officer as permitted under federal and state law; provided, however, that an Uncured Default is a condition precedent to the aforementioned actions including the filing of liens and perfection of security interests. The period of limitations on collection will be suspended under 26 U.S.C. 6503(h) for the trust fund periods and will terminate on the earlier of (1) all required payments to the Internal Revenue Service have been made under the plan; or (2) thirty (30) days after the date of the demand letter (described above) for which the debtor failed to cure the default.

**Class 9**:  Equity Interests.  This Class consists of the equity interest held in the Debtor by the shareholder(s).

Treatment: The shareholder(s) -- which consist of Candelario Ontiveros whom is now deceased and, upon information and belief, the spouse thereof Veronica Lyzette Ontiveros is the present shareholder under the Last Will of Candelario Ontiveros -- are the Holders of Equity Interests in the Debtor. Holders of Equity Interests in the Debtor shall retain their interests in the Debtor. The requirements of 11 U.S.C. § 1129(b)(2) and the Absolute Priority Rule are satisfied because the claims of the Debtor's creditors are being paid in full. The Holders of Equity Interests are not impaired under the Plan. No securities are issued under the Plan, thereby satisfying 11 U.S.C. § 1123(a)(6).

C.  Chart with Treatment of Claims

| Class | Name of Creditor Classification of Claim | Amount Claimed | Years Amortized | Payment (Amount and Frequency) | Interest Rate |
|---|---|---|---|---|---|
| 1 | Trustee Fee Administrative Claim | n/a | n/a | n/a | n/a |
| 2 | Professional Fees Administrative Claim<br><br>Villeda Law Group<br><br>Rolando Flores CPA | TBD, fee app pending<br><br>TBD, fee app pending | n/a<br><br>n/a | Upon approval of the Court, these professional fees and costs will be paid within 30-days of confirmation of this Plan/ | 0% |
| 3 | Advantage Funding Secured Claim – Unimpaired | $150,000.00 Secured<br><br>$42,258.80 Unsecured | Unimpaired, maturity date of 03/4/2021. | $4,409.00 monthly until the maturity date of 03/4/2021. | 5.974% |
| 4 | Ally Bank Secured Claim – Unimpaired | $26,195.91 | Unimpaired, maturity date of 01/17/2023 | $601.92 monthly until the maturity date of 01/17/2023. | 5.85% |
| 5 | Ally Bank Secured Claim - Unimpaired | $27,682.00 | Unimpaired, maturity date of 01/17/2023 | $636.07 monthly until the maturity date of 01/17/2023. | 5.85% |
| 6 | Signature Financial | $52,500.00 | Unimpaired, maturity date of 03/20/2022 | $1,425.00 monthly until the maturity date of 03/20/2022. | 9.1% |
| 7 | Signature Financial | $52,500.00 | Unimpaired, maturity date of 03/20/2022 | $1,425.00 monthly until the maturity date of 03/20/2022. | 9.1% |
| 8 | Internal Revenue Service Unsecured Priority Tax Claim Impaired<br><br>Internal Revenue Service Unsecured Non-Priority Impaired | $812,252.69<br><br>$390,203.41 | 5 years<br><br>n/a | $15,703.13 monthly for 60 months<br><br>$0, per agreement with IRS, provided that Debtor is successful in paying the Unsecured Property Claim (as set out in greater detail elsewhere in the Plan) | 6%<br><br>n/a |

| 9 | Equity Interest Holders | | | Interest in Debtor will be maintained | |
|---|---|---|---|---|---|
| | Total Monthly Plan Payment: | | | $24,200.12 | |

### D.  Feasibility of the Plan

This plan is feasible as set out below. Specifically, the Debtor's projected average monthly net income is $199,312.17. This monthly income is sufficient to pay the projected Plan Payment of $24,200.12. The current monthly net income is described as follows:

| Description of Source of Income | Monthly Gross Income |
|---|---|
| Income from Services Provided by the Debtor | $1,403,014.96[6] |
| Monthly Operating Expenses[7] | $1,179,502.67[8] |
| Monthly Net Income | $223,512.29 |
| Projected Monthly Plan Payment: | $24,200.12 |
| Overage After Projected Plan Payment: | $199,312.17 |

True and correct copies of the monthly operating reports filed in this bankruptcy to date are attached as Exhibit "A". A spreadsheet with the annual income projections and projected Plan Payments is attached as Exhibit "B".

### VIII.  The Best Interest of the Creditor Rule / Liquidation Analysis

Pursuant to 11 U.S.C. § 1129(a)(7),23 "[a] reorganization plan must either be accepted by each creditor or satisfy the Code's "best interests of the creditor" test (e.g., liquidation analysis).

---

[6] This is the "total cash receipts" figure reported in the Debtor's monthly operating report for January of 2019.

[7] Said expenses include the leases (e.g., equipment leases, vehicle leases) and other contracts described in Section "XII," below.

[8] This is the "total cash receipts" figure reported in the Debtor's monthly operating report for January of 2019.

As applied here, in the event that the Plan is accepted by each creditor, the "best interests of the creditor" test (e.g., liquidation analysis") need not be applied. See, e.g., *In re Couture Hotel Corp*., 536 B.R. 712, 735–36 (Bankr. N.D. Tex. 2015)

In the event that that the Plan is not accepted by each creditor, the "best interests of the creditor" test is satisfied, without the need for any liquidation analysis, for the following reason. The Plan pays all creditors in full with interest, which per-se satisfies the "best interests of the creditor" test.  See *In re Couture Hotel Corp*., 536 B.R. 712, 735–36 (Bankr. N.D. Tex. 2015), to-wit:

> Citing to § 1129(a)(7), **Mansa objects to the Plan alleging that creditors would receive more 'up front' in a Chapter 7 liquidation** than they would under the Plan. In support of its argument, Mansa alleges that: 'upon a liquidation, $1,054,883.6024 would be available to immediately pay all of the Debtor's unsecured creditors (assuming rejection damages claims and the claims of insiders are excluded from this calculation ) in full and represents a more complete and timely satisfaction of their claims than would occur under the Plan.'….Mansa misstates the best interests of creditors test. It is not whether creditors will receive more 'up front' or more overall, but whether creditors will receive at least as much as they would in a chapter 7 liquidation. **Here, the Plan seeks to pay all creditors in full with interest, which is all creditors are legally entitled to receive. By definition, the Plan cannot fail the best interests test of § 1129(a)(7).**

*Id*. at 735-36

Alternatively, in an abundance of caution, liquidation analysis is as follows: Liquidation would not be in the best interest of the estate because the Debtor has estimated that its assets would generate the following amounts in a Chapter 7 liquidation:

### LIQUIDATION ANALYSIS (UNAUDITED)

| DESCRIPTION AND CATEGORY OF ASSETS | FAIR MARKET VALUE (ESTIMATED FMV) | AMOUNT OF LIENS HELD AGAINST THIS ASSET | VALUE AVAILABLE TO ESTATE | LIQUIDATION VALUE (without payment of secured liens) |
|---|---|---|---|---|
| **Office Furniture & Supplies** | $10,227.00 | | $10,227.00 | $ 4,706.62[9] |
| **Machinery, Fixtures & Equipment (shop)** | $3,437.00 | | $3,437.00 | $1,546.65[10] |
| **Vehicles** | $561,780.00 | $308,877.91 | $252,902.09 | $113,805.94[11] |
| **Accounts Receivable** | $1,392,762.52 | | $1,392,762.52 | $626,743.13[12] |

---

[9]   This amount is based upon a 45% liquidation rate of recovery on these items of personal property.
[10]   This amount is based upon a 45% liquidation rate of recovery on these items of personal property.
[11]   This amount is based upon a 45% liquidation rate of recovery on these items of personal property.

| Causes of Action | $920,000.00 | | $920,000.00 | $99,000.00[13] |
|---|---|---|---|---|
| Cash | $421,980.19[14] | | $421,980.19 | $421,980.19 |
| | | | | |
| **TOTAL VALUE OF ASSETS:** | **$3,310,186.71** | **$308,877.91** | **$3,001,308.8** | **$1,267,782.53** |
| | | | | |
| | | | **Less Secured Claims** | <308,877.91> |
| | | | | |
| Liquidation Value | | | | **$958,904.62** |
| IRS Debt | | | | **<$1,202,456.10>** |
| | | | | |
| Projected Net Liquidation Funds Available in a Hypothetical Chapter 7 Liquidation | | | | **<$243,551.48>** |

**Regarding accounts receivable, in particular.** The best indicator of the value of the Debtor's accounts receivable is the Debtor's historic cash receipts, for the following reasons. As is typical in the ambulance industry, the face amounts of the Debtor's accounts receivable do not reflect the large downward adjustments and systematic write-offs inherent in private insurance reimbursements, medicare reimbursements, and medicaid reimbursements. Furthermore, the small percentage (roughly 15%) that is "private pay" are frequently uncollectable. Accordingly, historic collections is the best indicator of the value of the Debtor's account's receivable. Other bankruptcy courts have applied collections-based valuations to accounts receivable. See, e.g., *In re Dependable Auto Shippers, Inc*., AP 17-3086, 2018 WL 4348049, at *11–12 (Bankr. N.D. Tex. Sept. 7, 2018) **("The best evidence of the value** of TBK's collateral **is the amount of the debtor's accounts receivable actually collected**, rather than a hypothetical value."); see also, *In re Epic Cycle Interactive, Inc*., ADV 11-90111-CL, 2014 WL 2567170, at *7 (Bankr. S.D. Cal. June 6, 2014) ("Mr. Corson based his analysis on the Debtor's past history of cash collections….**The court accepts Debtor's past performance as a better indicator of the Debtor's current performance on collecting its receivables."**) As applied here, the Debtor's cash receipts for January of 2019 total $1,403,014.96. Said figure is consistent with the Debtor's historical average. In 2018, the Debtor's cash receipts averaged $1,386,571.52, monthly. Averaging January of 2019 with the monthly average for 2018 yields an average of $1,387,836.40. For those reasons, a $1,387,836.40 valuation is assigned to the Debtor's accounts receivable.

### IX.  Risks to Creditors under the Debtor's Plan

There is always a chance that a plan may not succeed, but the Debtor is confident that it can earn more than sufficient income to pay the Plan Payments.

### X.  Payment – Prepayment

---

[12]   This amount is based upon a 45% liquidation rate of recovery on these items of personal property.
[13]   This amount is based upon a 45% liquidation rate of recovery with respect to the cause of action against Hidalgo County Emergency Services District 4 for $20,000.00 and 10% liquidation rate based on the Debtor's opinion of the collectability of the cause of action against the State of Texas on the due eligibility claim of $900,000.00.
[14]   This amount is based on the Debtor's most recent Monthly Operating Report of January of 2019.

Any claim may be prepaid at any time, without penalty.  Interest as provided in this Plan must be paid through the date of the prepayment. Unless indicated otherwise elsewhere in this Plan, distribution under the Plan shall commence on the first of the month, following one full month after the Effective Date. Effective Date shall mean fifteen (15) days following entry of the Confirmation Order.

## XI.  Tax Issues

The tax effects on holders of claims will vary significantly depending on numerous factors including how the holder has treated its claim for tax purposes. This Plan does not provide tax any advice. Because each entity's / person's tax situation varies, you are urged to consult your own tax advisors to determine the tax effect of the Plan on you. No opinion regarding the income tax ramifications of this Plan is provided to any party-in-interest or Creditor.

## XII.  Executory Contracts and Leases

The Debtor is a party to numerous executory contracts and unexpired leases, including the following:

| Contracting Party | Description of Contract |
|---|---|
| City of Alamo | December 20, 2016 Contract for Emergency Ambulance Services |
| City of McAllen | November 30, 2015 Contract for Emergency Ambulance Services |
| City of Mercedes | January 10, 2018 Contract for Emergency Ambulance Services |
| City of Mission | July 10, 2017 Contract for Emergency Ambulance Services |
| City of San Juan | October  25, 2011 Contract for Emergency Ambulance Services |
| City of Hidalgo | April 14, 2016 Contract for Emergency Ambulance Services |
| City of La Joya | January 15, 2019 Contract for Emergency Ambulance Services |
| Hidalgo County Emergency Services District #4 | November 30, 2017 Contract for Emergency Ambulance Services |
| Doctors Hospital at Renaissance | February 1, 2018 Contract for Emergency Ambulance Services |

| Gulf Coast Division, Inc. | September 1, 2018 Contract for Emergency Ambulance Services |
|---|---|
| Knapp Medical Center | February 1, 2018 Contract for Emergency Ambulance Services |
| Mission Regional Medical Center | September 1, 2017 Contract for Emergency Ambulance Services |
| South Texas Health System | May 1, 2015 Contract for Emergency Ambulance Services |
| Rio Grande Valley Communications Group | June 20, 2012 Contract for Radio Services |
| **Audie E. Ray** | **December 10, 2013 Lease for 200-M East Expressway, Pharr, Texas** |
| **Greater Good Real Estate** | **May 1, 2010 Lease for 4220 N. Bicentennial, Ste. F, McAllen, Texas** |
| **Ricardo Leal** | **July 1, 2015 Lease for 1200 Dunlap Ave., Ste. C, Mission, Texas** |
| **Three View Plaza, LLC** | **December 1, 2012 Lease for 909 W. 495, San Juan, Texas** |
| **Ontiveros Family Living Trust** | **March 2003 Lease for Main Station & Office** |
| Med One | Equipment Lease dated March of 2018 |
| Santander | Vehicle Leases dated April 5, 2017 |
| Stryker | Equipment Lease dated October 15, 2018 |
| US Bank Equipment Finance | Equipment Lease dated April 7, 2014 |
| NDS Leasing | Equipment Lease dated July 29, 2016 |

The real property leases of the Debtor (i.e., those that are in **bold** in the above table) are hereby assumed by the Debtor. Except for the aforementioned real property leases, all of the executory contracts and unexpired leases to which the Debtor is a party (including those listed in the above table) are neither assumed nor rejected; therefore, those **contracts and**

leases pass through the Bankruptcy unaffected.[15] **Any amounts owed by the Debtor on said contracts and leases continue to be owed by the Debtor and are unaffected by this Bankruptcy.**[16]

### XIII. Claims Objections

Claims objections must be filed not later than 30 days after entry of the order confirming the Plan. This deadline may be extended by the Court, on motion by a party in interest. Any such motion must be filed not later than 30 days after entry of the order confirming the Plan.

### XIVI.  Effect of Confirmation of Plan
### A.  Discharge, Vesting, and Effective Date

Confirmation of the Plan shall discharge and fully satisfy, pursuant to and so provided by 11 U.S.C. §1141(d) of the Bankruptcy Code, and as provided contractually pursuant to the terms of the Plan, all Debts, liabilities, and obligations of the Debtor (including all penalties, fines or forfeitures, and damages) that arose before the Confirmation Date, except as otherwise specifically provided in the Plan or the Order Confirming Plan, whether or not such Claim is Allowed or paid pursuant to this Plan. Upon Confirmation, the Plan shall Discharge all Debts (as defined in 11 U.S.C. §101) and all Claims against, and liabilities of, the Debtor which are Dischargeable by Debtor in a case under 11 U.S.C. §101. et seq. by statute or by law applicable to Title 11, U.S.C., and in a Chapter 11 Case, or by contract with a Creditor.  All Creditors and Persons will continue to be stayed and enjoined from proceeding against the Debtor and its assets pursuant to 11 U.S.C. §524.

IT IS THE INTENTION OF THIS PLAN THAT ONCE CONFIRMATION OCCURS, THE DEBTOR  WILL  BE FULLY, FINALLY,  AND COMPLETELY  DISCHARGED FROM  ALL LIABILITIES ON  CLAIMS  AND DEBTS  AND SHALL BE REVESTED WITH  ALL PROPERTY OF THE ESTATE AS HEREIN  PROVIDED.

Upon Confirmation, title to all assets of the Debtor shall be retained by and re-vested in the Debtor, free and clear of all claims, liens, security and equitable interests, except as specifically  set  forth  in  this  Plan.   The  Order  Confirming  Plan  shall  be  a  judicial

---

[15] See *ASARCO, L.L.C. v. Montana Res., Inc*., 858 F.3d 949, 959 (5th Cir. 2017) ("Executory contracts that are not assumed or rejected **'ride through' the bankruptcy 'unaffected by the bankruptcy proceedings.'"**) (citing *In re O'Connor*, 258 F.3d 392, 405 (5th Cir. 2001); see also, *Matter of Greystone III Joint Venture*, 995 F.2d 1274, 1281 (5th Cir. 1991) ("A debtor in Chapter 11 must either assume or reject its leases with third parties. If the debtor does neither, **the leases continue in effect** and the lessees have no provable claim against the bankruptcy estate.") (internal citations omitted)

[16] See above Footnote.

determination of and a contract for, the discharge of the liabilities of and Claims against the Debtor.

The Effective Date of this Plan is the fifteenth (15th) day after entry of the order confirming the Plan, unless the confirmation order is stayed. If the confirmation order is stayed, the Effective Date shall be the 15th day following the termination of the stay. No party may act pursuant to this Plan prior to the Effective Date.

## B. Obligations to the United States Trustee

The Debtor will be responsible for timely payments of the United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6). Any fees due as of the date of confirmation will be paid on the Effective Date. After confirmation, the Debtor will continue to file timely financial reports in the format required by the United States Trustee and continue to pay quarterly fees as accrued until the case is closed, converted to a case under chapter 7, or dismissed.

## XV. Releases and Alteration of Rights

Release of Liens, Claims and Causes of Action: All creditors of the Debtor receiving payment or distributions pursuant to the Plan in consideration for the promises and obligations of the Debtor under the Plan shall be deemed to have waived, released, and discharged all rights or claims which they had or might have had against the Debtor.

Allowed Secured Claims: The lien securing any Allowed Secured Claim shall be deemed to be released and discharged in its entirety when the Allowed secured Claim secured by such lien has been paid in full, as may be limited by the provisions of this Plan. Upon such payment in full, the holder of such Allowed Secured Claims shall execute and deliver such instruments as may be reasonably requested by the Debtor or the Re-vested Debtor, in order to reflect such release and discharge on the appropriate land or public filing records.

Release of Judgment Liens: the Order confirming the Plan shall constitute a release and discharge of all judgment liens against any property, creditor asset, or asset of the Debtor or the Bankruptcy Estate. A certified copy of the confirmation Order, shall constitute a release of any such judgment lien, or, at its sole discretion, the Debtor may demand and obtain from any judgment lien holder, at the cost of expense of the Debtor, a release of such judgment lien in recordable form. If after a reasonable request is made,any creditor who refuses or fails to execute said release, all costs (attorney's fees, filing fees, etc.) to enforce this process shall be borne by the creditor who refused.

Guarantees; Indemnities; Notes; Bonds; Etc.: All Claims and causes of action based upon guarantees of collection, payment or performance, indemnity or performance bonds,

promissory notes, or other similar undertakings made or given by the Debtor as to the obligations or performance of another or of any other person shall be discharged, released and no further force and effect, except as otherwise provided in this Plan.

Release Upon Payment and Discharge:   All consideration and payments provided under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, Debts and liabilities of any nature whatsoever against the Debtor or any of their assets or properties effective on the Effective Date.   Except as may be otherwise provided herein, at the Confirmation Date all Claims against the Debtor shall be satisfied, Discharged, and released in full; and all claimants, holders of Claims and all Creditors shall be precluded from asserting against the Debtor, its assets, properties, or interests held by it, any Claim or future Claim based upon any transaction arising on or prior to the Confirmation Date.

Releases: All creditors of the Debtor receiving payment or distributions pursuant to the Plan, in consideration for the premises and obligations of the Debtor under the Plan, shall be deemed to have waived, released, and Discharged all rights or Claims which they had or might have had against the Debtor, except those expressly set out herein, unless otherwise ordered by this Court in the Confirmation Order.

## XVI.  Default

Unless stated elsewhere in this Plan, if there is a default in payment to a creditor under this Plan, the creditor shall give the Debtor written notice of default and the default may be cured within 20 days of written notice sent to the Debtor by the affected creditor.  If the default is not cured within the 20-day period, the creditor may then seek any rights available under the Bankruptcy Code or under applicable non-bankruptcy law.

## XVII.  Injunction

Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against the Debtor, the Estate, properties of the Estate or proceeds of said property are, with respect to any such claims, specifically permanently enjoined and restrained from commencing, conducting or continuing any action or proceeding against the Debtor upon such Claims, including, but not limited to: (i) commencing, conducting or continuing in any  manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation) any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, Estate, properties of the  Estate  or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons based upon such Claims; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly

or indirectly, of any judgment, award, decreed or order against the Debtor, the Estate properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iii) creating,  perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate, properties of the Estate or proceeds of said property or any direct  or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons;  (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Estate, properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, the foregoing Persons; and (v) acting or proceeding  in any  manner,  in  any  place whatsoever, that does not conform to or comply with the provisions of the Plan.

## XVIII.  Release Upon Payment and Discharge

All consideration and payments provided under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, Debts, and liabilities of any nature whatsoever against the Debtor or any of its assets or properties effective on the Effective Date.  Except as may otherwise provided herein, at the Discharge Date all Claims against the Debtor shall be satisfied, Discharged, and released in full; and all claimants, holders of Claims and all Creditors shall be precluded from asserting against the Debtor, its assets, properties, or interests held by it, any Claim or future Claim based upon any transaction arising on or prior to the Confirmation Date.

## XIX.  Effect of Discharge Order

Upon entry of a Discharge Order, all creditors of the Debtor receiving payment or distributions pursuant to the Plan, in consideration for the promises and obligations of the Debtor under the Plan, shall be deemed to have waived, released, and Discharged all rights or Claims which they had or might have had against the Debtor, except those expressly set out herein, unless otherwise ordered by this Court in the Discharge Order.

## XX.  Exculpations

To the fullest extent permissible under all applicable law, the Debtor and its current shareholder, officers, directors, members, managers, agents, representatives, if any, for same shall have neither have nor incur any liability to any entity including, specifically, any holder of a Claim or Interest for any act taken or admitted to be taken in connection with or related to the prosecution of this Chapter 11 Case, the formulation, preparation, dissemination, implementation, Confirmation or consummation of any Plan, any Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Chapter 11 Case, any settlement agreement, purchase offer (whether accepted or rejected),

any Plan, any Disclosure Statement, or the Confirmation Order, including solicitation of acceptance of the Plan.

## XXI.  Jurisdiction of the Court

Without limiting the effect of Article 11.01 the Bankruptcy Court shall retain jurisdiction after Confirmation to:

(a) enter  and implement orders as may be necessary or appropriate, to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

(b) enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in the Plan and the Confirmation Order;

(c) enter such orders or judgments, including injunctions, as necessary to enforce the title, rights, and powers of the Debtor, Debtor, or the Plan;

(d) hear and determine all applications for the employment or compensation of Professional Persons and reimbursement of expenses under Sections 330, 331 or 503(b) of the Bankruptcy Code or the Plan; and

(e) enter such orders as are necessary to implement and enforce any injunctions provide for in the Plan and Confirmation Order.

## XXII. DEBTOR'S REQUEST FOR APPROVAL

WHEREFORE, the Debtor submits this Disclosure Statement and Plan, in good faith, in accordance with the provisions of Title 11, U.S.C. §101, et seq. and §1125 for approval  of  the Court at the Disclosure Statement Hearing, and for consideration by Creditors and other Parties-in-interest with respect to voting on the proposed Plan, and as the sole source of information furnished by the Debtor, or to be furnished by the Debtor, in solicitation of acceptance of the Debtor's Plan.

SIGNED on the 7th day of March 2019.


Respectfully submitted,

VILLEDA LAW GROUP
6316 N. 10th Street, Bldg. B
McAllen, Texas 78504
(956) 631-9100 – Telephone
(956) 631-9146 – Fax

MED CARE EMERECY MEDICAL          BY: /s/ Antonio Villeda

SERVICES, INC.

By: _____
Mack Gilbert

Antonio Villeda
State Bar No. 20585300
avilleda@mybusinesslawyer.com

By: /s/ Christopher Cheatham
Christopher Cheatham
State Bar No. 24053140
ccheatham@mybusinesslawyer.com

*Attorneys for Debtor, Med Care Emergency Medical Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on March 7, 2019, on all parties and counsel of record, as indicated below. Service was accomplished by the method and to the following as indicated: BY ELECTRONIC NOTICE OR REGULAR FIRST CLASS MAIL.

Stephen Douglas Statham                          Via ECF
OFFICE OF THE U.S. TRUSTEE
515 Rusk Ave. Ste. 3516
Houston, TX 77002
*Attorney for U.S. Trustee*

Notice of Appearance

Diane W. Sanders                                  Via ECF
LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
PO Box 17428
Austin, TX 78760-7428
Email: austin.bankruptcy@publicans.com
*Attorney for City of McAllen and Hidalgo County*

John M. Castillo                                  Via ECF
FARRIMOND CASTILLO & BRESNAHAN, P.C.
130 E. Travis St., Suite 350
San Antonio, Texas 78205
*Attorney for Sterling National Bank*

Kenneth Ferrer                                    Via USPS
STERLING NATIONAL BANK
Successor in interest to
Advantage Funding Commercial Capital Corp.

1111 Marcus Avenue
Lake Success, NY 11042

Mark A. Twenhafel                                         Via ECF
WALKER & TWENHAFEL, L.L.P.
P.O. Drawer 3766
McAllen, TX 78502-3766
*Attorney for City of McAllen*

Leslie Ann Berkoff                                       Via ECF
MORITT HOCK & HAMROFF LLP
400 Garden City Plaza
Garden City, NY 11530
*Attorney for Integrated Vehicle Leasint, Inc.*
*as assignee for Signature Financial LLC and*
*Santander Bank, N.A.*

Mark A. Swaim                                            Via ECF
ASSISTANT CITY ATTORNEY
P.O. Box 220
McAllen, TX 78505-0220
*Attorney for City of McAllen*

Jeana Long                                               Via ECF
Diann Bartek
DYKEMA GOSSETT PLLC
1400 N. McColl Road, Suite 204
McAllen, TX 78501
*Attorneys for International Bank of Commerce*

Others:

Internal Revenue Service                                 Via USPS
Bankruptcy Specialist                                    Via Email
Keri Templeton
300 E. 8th Street M/S 5026 AUS
Austin, TX 78701
Email: keri.a.templeton@irs.gov

Ally                                                     Via USPS
P.O. Box 9001948
Louisville, KY 40290

Debtor
Med Care Emergency Medical Services, Inc.
P.O. Box 6767

McAllen, Texas 78502
Email: veronica ontiveros mvontiveros@medcare-ems.com
Email: mack gilbert mgilbert@medcare-ems.com

BY: /s/ Christopher Cheatham
Christopher Cheatham